**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEBRA RAIMONDI,** | : | **No. 3:14cv1918** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **WYOMING COUNTY, THOMAS S.** | : | |
| **HENRY, JUDY KRAFT MEAD and** | : | |
| **RONALD P. WILLIAMS,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Debra Raimondi (hereinafter "Raimondi") asserts

Defendants Wyoming County, Thomas S. Henry, Judy Kraft Mead and

Ronald P. Williams's (collectively "defendants") decision to terminate her

employment with Wyoming County interfered with her rights under the

Family and Medical Leave Act, 29 U.S.C. §§ 2601-2619, 2631-2654 and 5

U.S.C. § 6381-6387 (hereinafter "the FMLA").[1]  At the conclusion of

discovery, Raimondi moved for partial summary judgment asserting no

genuine issue of material fact exists and she is entitled to judgment as a

matter of law on her FMLA interference claim.  Because the undisputed

evidence establishes that Raimondi was entitled to FMLA leave and the

---

[1]  Defendants Thomas S. Henry, Judy Kraft Mead and Ronald P. Williams were Wyoming County Commissioners at the time of Raimondi's leave and termination.  (Doc. 27, Pl.'s Concise Statement of Facts ¶¶ 2-4). These defendants made the collective decision not to restore Raimondi to her position following her leave and instead terminated her employment. (Id. ¶¶ 6-7).

defendants failed to restore Raimondi to her position following her leave and instead terminated her employment, the court will grant Raimondi's motion.

## Background

The instant FMLA lawsuit arose from Raimondi's employment with defendants.  In 2006, defendants hired Raimondi to serve as Assistant Director of Wyoming County's 911 Center.  (Doc. 27, Pl.'s  Concise Statement of Facts (hereinafter "SOF") ¶ 8).[2]  In 2007, defendants promoted Raimondi to the Director of Wyoming County's 911 Center.  (Id.)  Raimondi worked as the director until her termination on July 10, 2014.  (SOF ¶¶ 8, 45-46).

Two months before her termination, in late April or early May 2014, Raimondi's father fell and fractured his femur, which required the surgical insertion of a rod to promote stability and healing.  (Doc. 25-4, Ex. D, Debra Raimondi Decl. (hereinafter "Raimondi Decl.") ¶¶ 7-8; Doc. 25-10, Ex. J., medical records at 6-7).  Upon completion of his post-operation recovery, the hospital planned to discharge Raimondi's father to a nursing home to rehabilitate.  (Raimondi Decl. ¶¶ 7-8).

---

[2]  In this background section, the court will cite to Raimondi's statement of material facts as they are generally admitted by the defendants.  (See Doc. 31, Defs.' Answer to SOF).

In early May 2014, Raimondi's father entered a nursing home to recover from surgery.  (Id. ¶ 9).  At the same time, Raimondi's mother entered a nursing home because she could not care for herself alone.[3] (Id. ¶¶ 10-11).  On May 15, 2014, Raimondi's father telephoned her and requested she come to Indiana and care for her mother so her mother could be released from the nursing home.  (Id. ¶ 13).  Apparently, Raimondi's father believed the nursing home failed to administer proper mental health medications to her mother, causing her mother to experience episodes of pain, anxiety and difficulties with sleeping and eating.  (Id. ¶ 12).

In June 2014, Raimondi traveled to her parents' house in Indiana. (SOF ¶ 26).  The parties dispute whether Raimondi requested FMLA leave prior to her departure and whether Raimondi qualified for FMLA leave.

While on leave in Indiana with her parents, Raimondi called the Commissioner's office and spoke with Commissioners Henry, Mead and

---

[3]  Raimondi's mother suffered from active muscle spasms, Alzheimer's Disease, heart disease, hyperlipodemia, hypertension, and essential tremor, which caused her head and hands to continually shake. (Raimondi Decl. ¶ 5; Doc. 25-10, Ex. J., medical records at 1).  Regarding daily living activities, Raimondi's mother required assistance with cooking, using the bathroom, bathing, dressing, taking medications at the proper times throughout the day, and walking.  (Raimondi Decl. ¶ 5).

Williams on or about July 1, 2014.  (SOF ¶ 34).  During this call,

Commissioner Williams informed Raimondi that she would not be restored

to her position and that her employment would be terminated unless she

chose to resign.  (SOF ¶¶ 6-7, 35).

Soon thereafter, Raimondi returned to Pennsylvania and attended a

meeting with the Commissioners on Tuesday, July 8, 2014.  (SOF ¶¶ 37-

38).  Raimondi informed the defendants that she would not resign.  (SOF

¶ 45).  In response, the defendants terminated Raimondi's employment.

(Doc. 25-7, termination letter dated July 10, 2014).  The parties disagree

regarding the underlying reasons for Raimondi's termination.

In response to her termination, Raimondi filed a four-count

complaint.  The sole surviving claim after defendants' motion to dismiss is

Count One: interference or retaliation under the FMLA.  On February 26,

2016, Raimondi filed a partial motion for summary judgment on the issue

of defendants' liability under the FMLA.  The parties then briefed the

issues bringing this matter to its present procedural posture.

**Jurisdiction**

The court has federal question jurisdiction over this FMLA action.

See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction

of all civil actions arising under the Constitution, laws, or treaties of the

United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts

jurisdiction over civil actions brought to redress deprivations of

constitutional or statutory rights by way of damages or equitable relief).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.

See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R.

CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must

examine the facts in the light most favorable to the party opposing the

motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949

(3d Cir. 1990).  The burden is on the moving party to demonstrate that the

evidence is such that a reasonable jury could not return a verdict for the

non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material

when it might affect the outcome of the suit under the governing law.  Id.

Where the non-moving party will bear the burden of proof at trial, the party

moving for summary judgment may meet its burden by establishing that

the evidentiary materials of record, if reduced to admissible evidence,

would be insufficient to carry the non-movant's burden of proof at trial.

Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party

satisfies its burden, the burden shifts to the nonmoving party, who must go

beyond its pleadings, and designate specific facts by the use of affidavits,

depositions, admissions, or answers to interrogatories demonstrating that

there is a genuine issue for trial.  Id. at 324.

**Discussion**

Raimondi brings her employment discrimination claim pursuant to

the FMLA, which entitles "employees to take reasonable leave for medical

reasons, for the birth or adoption of a child, and for the care of a child,

spouse, or parent who has a serious health condition."  29 U.S.C.

§ 2601(b)(2).  "Eligible employees are entitled to '12 workweeks of leave

during any twelve-month period.'"  Lichtenstein v. Univ. of Pittsburgh Med.

Ctr., 691 F.3d 294, 300 (3d Cir. 2012) (quoting 29 U.S.C. § 2612(a)(1)).

Here, Raimondi claims she needed FMLA leave to care for her parents who suffered from serious health conditions.  Raimondi further asserts that the defendants failed to restore her to her position with Wyoming County following her leave.

The FMLA contains two relatively distinct provisions prohibiting employers from: (1) interfering with an employee's exercise of their right to take reasonable leave for medical reasons; and (2) discriminating or retaliating against an employee who exercises this right. 29 U.S.C. § 2615(a); see also Lichtenstein, 691 F.3d at 301 (explaining that under the FMLA, employers may not interfere with, restrain, or deny the exercise of or attempt to exercise FMLA rights, and employers may not discharge or in any other manner discriminate against any individual for opposing any practice made unlawful) (internal quotations omitted); Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005) (same).  Stated differently, interference claims derive from the denial of some benefit or protection afforded by the FMLA, whereas retaliation actions pertain to whether an employer used an employee's FMLA leave as a negative factor in its decision to terminate her employment.  As discussed in detail below, the court will construe Raimondi's claim as an interference claim.

## I. FMLA Interference

To state an FMLA interference claim, Raimondi must establish: (1) she was an eligible employee under the FMLA; (2) the defendants were an employer subject to the FMLA's requirements; (3) she was entitled to FMLA leave; (4) she provided notice to the defendants of her intention to take FMLA leave; and (5) she was denied benefits to which she was entitled under the FMLA.  Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014) (citations omitted).  "Also, '[b]ecause the FMLA [interference claim] is not about discrimination, a McDonnell Douglas burden-shifting analysis is not required.'"[4]  Id. at 192 (quoting Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006)).

In the instant matter, Raimondi easily satisfies the first two FMLA interference elements pertaining to her status as an eligible employee and the defendants as a covered employer.  (SOF ¶¶ 1, 9-11).  The critical issues here are whether: (1) Raimondi was entitled to FMLA leave; (2) Raimondi provided sufficient notice of her intention to take FMLA leave; and (3) defendants denied her a benefit to which she was entitled.  The court will address these three issues *in seriatim*.

---

[4]  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

## A.  Raimondi entitled to FMLA leave

Raimondi claims she was entitled to FMLA leave to provide care for her parents who suffered from serious health conditions.  Defendants argue Raimondi was not entitled to FMLA leave for three reasons.  First, Raimondi never asked for the FMLA forms.  Second, Wyoming County's (hereinafter "the County") leave donation policy supplants FMLA leave up and until the point in time when the employee exhausts all available leave, including all personal, vacation, holiday and sick time.  Third, genuine issues of fact preclude summary judgment regarding whether Raimondi's parents suffered from a serious health condition.  The court will address defendants' arguments in turn.

### 1.  Raimondi never asked for FMLA forms

Initially, defendants argue Raimondi is not entitled to FMLA leave because she never asked for the FMLA forms.  The Third Circuit Court of Appeals, however, has held that "[w]hile an employee seeking FMLA leave must 'state a qualifying reason for the needed leave' and fulfill notice requirements, the employee 'does not need to **expressly assert rights under the Act or even mention the FMLA**.'"  Hansler v. Lehigh Valley Hosp. Network, 798 F.3d 149, 153 (3d Cir. 2015) (quoting 29 C.F.R.

§ 825.301(b) (emphasis added)).  Rather, when the need for leave is unforeseeable, "employees are obligated to notify their employer 'as soon as practicable' and 'provide sufficient information for an employer to reasonably determine whether the FMLA may apply.'"  Lichtenstein, 691 F.3d at 303 (quoting 29 C.F.R. §§ 825.303(a)-(b)).

In the instant matter, Raimondi concedes that she never expressly requested "FMLA leave" or the "FMLA forms."  (Doc. 26, Pl.'s Br. in Supp. Mot. Summ. J. at 7).  The FMLA, however, places no burden on an employee to specifically request "FMLA leave."  Hansler, 798 F.3d at 153 (citing 29 C.F.R. § 825.301(b)).  Thus, the defendants' insistence that the FMLA expressly obligates Raimondi to state "I need FMLA leave" or "I need the FMLA forms" fails as a matter of law.

Instead, the FMLA obligates Raimondi to "provide sufficient information for an employer to reasonably determine whether the FMLA may apply."  29 C.F.R. §§ 825.303(a)-(b).  Here, the undisputed evidence establishes that Raimondi informed defendants, prior to traveling to Indiana to care for her parents, that she needed time off to be with her sick father and prepare her parents' house for their return from the nursing home.  (Doc. 37, Dep. of Thomas Henry (hereinafter "Henry Dep.") at 45,

10

48, 78-79; Doc. 25-1, Dep. of Wyoming Cnty. (hereinafter "Wyoming Cnty. Dep.") at 16-18).[5]  As discussed below, this request states a qualifying reason for the needed FMLA leave as a matter of law.

Moreover, defendants assume that an employee must specifically request FMLA leave .  Such an interpretation of the FMLA would deprive Raimondi of FMLA protections afforded employees when an employer determines their medical reasons are insufficient.  In Hansler, the Third Circuit Court of Appeals addressed a recent situation where an employee submitted information regarding her request for FMLA leave.  The employer reviewed the employee's medical certification form and determined that the FMLA did not apply.  The employer, however, failed to inform the employee that the FMLA would not apply to her leave. Eventually, the employee took her requested leave and shortly thereafter, the employer terminated the employee for excessive absenteeism without

---

[5]  William Gaylord testified on behalf of Wyoming County.  Mr. Gaylord is the Chief Clerk for the County Commissioners.  (Wyoming Cnty. Dep at 6; Henry Dep. at 105).  As the Chief Clerk for the past twenty-nine years, Mr. Gaylord serves as Wyoming County's human relations manager.  (Henry Dep. 12, 28, 73).  Mr. Gaylord, however, does not have the ability to approve or deny leave.  (Id. at 74-76).  Only the Wyoming County Commissioners can approve or deny leave and hire and fire County employees.  (Id. at 12, 28, 74-76).

affording the employee any opportunity to cure her deficient request for FMLA leave.

The Third Circuit addressed the responsibilities of an employer and employee under the FMLA.  Specifically, "[p]rior to taking leave, an employee must give her employer notice of the request for leave, 'stating a qualifying reason for the needed leave.'"  Id. at 153 (quoting 29 C.F.R. § 825.301(b)).  "An employer may require its employees to support their request for leave with a certification issued by a health care provider."  Id. (citing 29 U.S.C. § 2613(a)).  Significantly, the Third Circuit noted that the Department of Labor's regulations provide specific steps an employer may take when the employer perceives deficiencies in employee notices generally, and in medical certifications in particular:

> While an employee seeking FMLA leave must "state a qualifying reason for the needed leave" and fulfill notice requirements, the employee "does not need to expressly assert rights under the Act or even mention the FMLA."  29 C.F.R. § 825.301(b).  Instead, in "any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquirer further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying."  29 C.F.R. § 825.301(a).  In addition, an employer "shall advise an employee whenever the employer finds a certification is incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient."  29 C.F.R. § 825.305(c). . . .  If the

12

employer determines that a certification is either incomplete or insufficient, it may deny the requested leave . . . [b]ut it may only do so if it has "provided the employee with seven calendar days . . . to cure any such deficiency."  Id.

Hansler, 798 F.3d at 153.

After reviewing the employer's failure to afford plaintiff a chance to cure deficiencies in her medical certification, the Third Circuit held that "when a certification submitted by an employee is vague, ambiguous, or non-responsive . . . the employer shall advise the employee . . . what additional information is necessary to make the certification complete and sufficient and must provide the employee with seven calendar days . . . to cure any such deficiency."  Hansler, 798 F.3d at 155 (internal citations and quotation marks omitted).

Here, defendants never afforded Raimondi the opportunity to cure any deficiency in her notice or medical certification because they never asked for any clarification or a medical certification.  (SOF ¶ 59, Henry Dep. at 48).  Further, the defendants never provided Raimondi with FMLA leave application forms, the designation notice, rights and responsibilities notice and eligibility notice documents under the FMLA, because the defendants did not consider a request for leave to be FMLA protected unless the employee specifically stated that they needed FMLA leave.

(SOF ¶¶ 60-61).

In short, when confronted with a request to travel out-of-state to provide comfort to her ill parents and assist with their transition from a nursing home back to their house, the defendants utterly failed to do anything other than bury their collective heads in the sand.  Such inaction by an employer, even if derived from inadvertent indifference or a fundamental misunderstanding of the twenty-three year old FMLA, does not preclude an employee from asserting the FMLA's protections.

## 2. County leave donation policy

The defendants next argue that Raimondi is not entitled to FMLA leave because the County's leave donation policy supplants FMLA leave up to the point in time when the employee exhausts all available leave, including all personal, vacation, holiday and sick time.  Defendants' position lacks merit.

Generally, FMLA leave is unpaid.  The FMLA, however, "permits an eligible employee to substitute accrued paid leave for FMLA leave.  If an employee does not choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for unpaid FMLA leave."  29 C.F.R. § 825.207(a).  The regulations provide that "the

14

paid leave provided by the employer, and accrued pursuant to established

policies of the employer, will **run concurrently with the unpaid FMLA**

**leave**." Id. (emphasis added).  Thus, "the employee receives pay

pursuant to the employer's applicable paid leave policy during the period

of otherwise unpaid FMLA leave." Id.

Here, defendants' leave policy states:

> **Section 1**  Permanent employees may donate sick,
> annual and personal leave to a designated permanent
> employee in the employee's agency who has used all
> accrued and anticipated paid leave for the current leave
> calendar year.  This leave is to be used for the recipient's
> own catastrophic injury or illness or for the catastrophic
> injury or illness of a family member.
> **Section 2**  Recipients
> \*                    \*                    \*
> C.  A catastrophic illness or injury that poses a
> direct threat to life or to the vital function of major bodily
> systems or organs, and would cause the employee to take
> leave without pay or terminate employment, must be
> documented on a Family and Medical Leave Act Serious
> Health Condition/Certification form.
> \*                    \*                    \*
> E.  All accrued leave must be used as follows
> before any donation may be received . . . 2) For the
> catastrophic injury or illness of a family member, all accrued
> annual, personal, holiday and compensatory leave for the
> current calendar year must be used.

(Doc. 25-8, Wyoming Cnty. Pers. Policy at 6-7).

Regarding the implementation of this policy, the County's designee

testified that when individuals first go out on leave, for any medical reason,

15

"they're taking their leave, they have time to take.  And I think when they

run out of time, then they can apply for Family [and] Medical Leave, that's

our understanding of it."  (Wyoming Cnty. Dep. at 19).  Furthermore,

"[b]ecause it's part of our Personnel Policy now, the leave must be

exhausted before they can apply for Family Medical Leave."  (Id. at 20).

"But like I said before, we're going to do everything we can to avoid Family

[and] Medical Leave because we have a Leave Donation Program, we

don't want to see our employees have to go through [leave] without having

a paycheck."  (Id.)

Defendants' emphasis on Raimondi's use of her own leave

demonstrates that they do not understand that the FMLA allows paid leave

under an employer's leave policy **to run concurrently** with unpaid FMLA

leave.  FMLA protections apply to **any** leave that qualifies, regardless of

whether the employer designates the leave for payroll purposes as

"personal leave" or "vacation or sick time."  Moreover, the Third Circuit

Court of Appeals recognizes "that where an employer's internal policies

conflict with the FMLA, the FMLA controls and the employee need only

comply with the requirements of the Act to invoke its protection."  Callison,

430 F.3d at 121; see also 29 U.S.C. § 2652(b) (stating that "the rights

established for employees under this Act . . . **shall not** be diminished by .

. . any employment benefit program or plan").

In short, no paid leave policy may usurp protections afforded to

employees under the FMLA.  While an employer may require an employee

to use various forms of accrued leave while on FMLA leave, this does not

change the fact that it is FMLA-protected.  Therefore, the defendants'

leave policy does not preclude Raimondi from accessing the FMLA's

protections.

### 3.  Serious health condition

Finally, defendants contend Raimondi's parents suffered no medical

emergency, necessitating Raimondi's need for FMLA leave.  FMLA leave,

however, is not limited to "medical emergency" situations.  Rather, for this

"family member" type of leave, an eligible employee may take leave "to

care for" a family member's physical and psychological needs, including

"providing psychological comfort and reassurance which would be

beneficial to a child, spouse or parent with a serious health condition who

is receiving inpatient or home care."  29 C.F.R. § 825.124(a).  Moreover,

this "needed to care for" term also embraces situations where the

employee "may be needed to substitute for others who normally care for

the family member . . . or **to make arrangements for changes in care**, such as transfer to a nursing home."  29 C.F.R. § 825.124(b) (emphasis added).

The family member to be cared for must have a "serious health condition," defined as a physical or mental condition involving either inpatient care or continuing treatment involving a period of incapacity or treatment for incapacity.  29 U.S.C. §§ 2611(11), 2612(a)(1)(D); 29 C.F.R. §§ 825.102, 825.113(a).  "A serious health condition involving continuing treatment by a health care provider includes . . . [a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition. 29 C.F.R. § 825.115(c).  The regulations define a chronic serious health condition as  one which:

> (1) Requires periodic visits (defined as at least twice a year)
> for treatment by a health care provider, or by a nurse under
> direct supervision of a health care provider;
> (2) Continues over an extended period of time (including
> recurring episodes of a single underlying condition); and
> (3) May cause episodic rather than a continuing period of
> incapacity (e.g., asthma, diabetes, epilepsy, etc.).

Id.

The undisputed facts establish that, at the time of these events, Raimondi's mother and father suffered from serious health conditions. Raimondi's mother suffered from active muscle spasms, Alzheimer's

Disease, heart disease, hyperlipodemia, hypertension, and essential

tremor, which caused her head and hands to continually shake.

(Raimondi Decl. ¶ 5; Doc. 25-10, Ex. J., medical records at 1).  Regarding

daily living activities, Raimondi's mother required assistance with cooking,

using the bathroom, bathing, dressing, taking medications at the proper

times throughout the day, and walking.  (Raimondi Decl. ¶ 5).

Raimondi's father suffered from atrial fibrillation, unstable angina,

abnormal EKG, and shortness of breath.  (Doc. 25-10, Ex. J., medical

records at 7).  Additionally, in late April or early May 2014, Raimondi's

father fell and fractured his femur, which required the surgical insertion of

a rod to promote stability and healing.  (Id. at 6-7, Raimondi Decl. ¶¶ 7-8).

In early May 2014, Raimondi's father entered a nursing home to

recover from surgery.  (Raimondi Decl. ¶ 9).  At the same time,

Raimondi's mother entered a nursing home because she could not care

for herself alone.  (Id. ¶¶ 10-11).  On May 15, 2014, Raimondi's father

telephoned her and requested she come to Indiana and care for her

mother so her mother could be released from the nursing home.  (Id.

¶ 13).  Apparently, Raimondi's father believed the nursing home failed to

administer proper mental health medications to her mother, causing her

mother to experience episodes of pain, anxiety, and difficulties with sleeping and eating.  (Id. ¶ 12).

On June 2, 2014, Raimondi traveled to Indiana and made arrangements for changes in her mother's care.  (Id. ¶ 17).  Specifically, Raimondi discharged her mother from the nursing home and began caring for her mother's physical and psychological needs.  (Id. ¶ 17).  Raimondi bathed, dressed, and cooked for her mother.  (Id.)  She also took her mother to the bathroom and to all of her medical appointments.  (Id.)

The nursing home discharged Raimondi's father on Friday, June 27, 2014.  (Id. ¶ 22).  Raimondi planned on staying with her parents until Sunday, June 29, 2014, to facilitate the changes in her parents' care.  (Id.) Raimondi, however, called the defendants on June 30, 2014, and requested to extend her leave until July 3rd because her mother fell and broke her wrist on Sunday, June 29th, and Raimondi needed to drive her mother to an appointment with an orthopedic surgeon on Tuesday, July 1st.  (Id. ¶¶ 24-28).  Thus, the undisputed facts clearly establish Raimondi's parents suffered from "serious health conditions."

Confronted with these facts, defendants generally deny that Raimondi's parents suffered from serious health conditions.  (See Doc.

31, Defs.'s Resp. to SOF ¶¶ 12-21).  Defendants' conclusory denial,

however, is insufficient to manufacture an issue of material fact because

the non-moving party must go beyond its pleadings and designate specific

facts by the use of affidavits, depositions, admissions, or answers to

interrogatories demonstrating that there is a genuine issue for trial.

Celotex, 477 U.S. 317 at 324; Fireman's Ins. Co. of Newark, N.J. v.

DuFrense, 676 F.2d 965, 969 (3d Cir. 1982).  As such, the court rejects

defendants' conclusory denials and will find that Raimondi's parents

suffered from serious health conditions.

Moreover, defendants' contention that they never received any

information regarding the health of Raimondi's parents fails to support

their case.  The FMLA provides that in "any circumstance where the

employer does not have sufficient information about the reason for an

employee's use of leave, the **employer should inquire further of the**

**employee** . . . to ascertain whether leave is potentially FMLA-qualifying."

29 C.F.R. § 825.301(a) (emphasis added).  Specifically, an employer "may

require its employee to support their requests for leave with a certification

issued by a health care provider."  Hansler, 798 F.3d at 153 (citing 29

U.S.C. § 2613(a)).  Defendants cannot now turn their failure to inquire

further regarding the reasons for Raimondi's leave against her and claim Raimondi's parents never suffered from a serious health condition.

Accordingly, the court will find that Raimondi was entitled to FMLA leave as a matter of law.  The undisputed evidence demonstrated Raimondi's parents suffered from serious health conditions.  Further, no paid leave policy may usurp protections afforded to employees under the FMLA.  Finally, the FMLA does not require employees to expressly request FMLA forms to access the FMLA's protections.  Rather, the employee must give her employer notice of the request for leave, stating a qualified reason for the needed leave.  If the employer determines an employee's request is deficient, the FMLA places the burden on employers to inquire further of the employee as to the employee's reasons for leave.

### B. Notice

Having determined that Raimondi was entitled to FMLA leave, the court next addresses whether she satisfied the FMLA's notice requirements.  The Third Circuit Court of Appeals has held that the notice element is "not a formalistic or stringent standard."  <u>Lichtenstein</u>, 691 F.3d at 303.  Where, as here, the need for leave is unforeseeable, "employees

22

are obligated to notify their employer 'as soon as practicable' and 'provide sufficient information for an employer to reasonably determine whether the FMLA may apply.'" Id. (quoting 29 C.F.R. §§ 825.303(a)-(b)).

"When an employee seeks leave for the first time for an FMLA-qualifying reason, the employee **need not expressly assert rights under the FMLA or even mention the FMLA**" 29 C.F.R. § 825.303(b) (emphasis added).  The employee need only provide "'sufficient information for an employer to reasonably determine whether the FMLA **may** apply to the leave request.'" Lichtenstein, 691 F.3d at 303 (quoting 29 C.F.R. § 825.303(b)).  Further, "'where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying.'" Id. (quoting 29 C.F.R. § 825.301(a)).  The key consideration for determining whether the employee's notice was adequate "is how the information conveyed to the employer is reasonably interpreted." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007).  This is "generally a question of fact, not law." Lichtenstein, 691 F.3d at 303.

In the instant matter, the undisputed evidence establishes that

Raimondi cleared the relatively low burden of providing notice to defendants of her intent to take FMLA leave.  Regarding Raimondi's initial request for leave, Commissioner Thomas Henry testified that Raimondi's "dad was **ill**, and she had to get the house ready for him to come home." (Henry Dep. at 45).  Commissioner Henry also testified that Raimondi requested time off "to get ready for her dad to come home from the hospital."  (Id. at 48).  Regarding Raimondi's request to extend her leave, Commissioner Henry testified that Raimondi's "mom might've broke her hand or something."  (Id.)

The County's designee further testified that it was the defendants' understanding that Raimondi asked for leave because of her parents' medical conditions.  (Wyoming Cnty. Dep. at 16-17, 23).  Moreover, while Raimondi was in Indiana, the County reminded her that "Family Medical Leave is available."  (Id. at 17).  Finally, the County testified that when Raimondi went out on leave her leave was "probably protected" under the FMLA.  (Id. at 18).  Specifically:

> Q:  Okay, And it says, she did not qualify for leave under the Family Medical Leave Act.  What evidence does the County have to support the contention that she did not qualify for leave?
>
> A:  We don't have any evidence that she doesn't qualify.
>
> Q:  Do you think she did qualify?

24

A:    If she requested it, yes.

Q:    So the only thing that kept her from having this leave designated FMLA was the fact that she didn't ask for it?

A:    The paperwork was not completed and she never asked for it.

Q:    And the County never provided it?

A:    She never asked for it.

Q:    I understand, but the County never affirmatively provided it, right?

A:    If she would have asked for it, she would have got it because she let us know within 30 days of her intentions of taking it.

(Id. at 56-57).  Based upon this uncontested evidence, the court will find that Raimondi satisfied the FMLA's notice obligations as a matter of law.[6]

## C.  Denied benefits

The final element of Raimondi's interference claim requires her to demonstrate that she "was entitled to benefits under the FMLA and that her employer illegitimately prevented her from obtaining those benefits." Sarnowski, 510 F.3d at 401.  Here, the court has previously determined that Raimondi was entitled to FMLA benefits.  As such, we must address

---

[6]  The defendants once again argue that they "**assume[d]** that [Raimondi's] request for time off was simply personal time."  (Doc. 30, Br. in Opp'n at 10).  Thus, according to the defendants, they need not concern themselves with the FMLA's notice obligations because Raimondi's requested time off was simply personal time.  As discussed in detail throughout this memorandum, this assumption demonstrates defendants' fundamental misunderstanding of their FMLA obligations.

25

whether defendants illegitimately denied Raimondi FMLA benefits.

Raimondi asserts the defendants denied her the benefit of restoration to her position at the conclusion of her leave.  When an employee returns from FMLA leave, the employer must restore the employee to the same or equivalent position she held, with equivalent benefits and with conditions of employment comparable to those she had when she left.  Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)); see also Fiorentini v. William Penn Sch. Dist., –F. Supp. 3d–, 2016 WL 552478, at *7 (E.D. Pa. Feb. 9, 2016) (granting summary judgment to the defendant because the plaintiff failed to demonstrate that FMLA benefits were withheld).  The undisputed evidence demonstrates that the defendants informed Raimondi **prior** to the conclusion of her FMLA leave that she could not return to her position.[7]  (SOF ¶¶ 6-7, 34-38).  Therefore, it appears the defendants

---

[7]  Moreover, the denial of benefits element also includes an employer "[i]nterfering with the exercise of an employee's rights . . . [such as] refusing to authorize FMLA leave, [or] discouraging an employee from using such leave.  It would also include manipulation by a covered employer to avoid responsibilities under [the] FMLA."  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 142 (3d Cir. 2004) (internal quotation marks omitted).  As discussed in detail above, the defendants' leave policy expressly interfered with Raimondi's rights to seek protections under the FMLA until she exhausted all of her non-FMLA protected paid

failed to restore Raimondi to her position, which is a denial of an FMLA benefit.

The defendants argue that Raimondi would have been terminated regardless of her FMLA leave.  Specifically, defendants fired Raimondi because she failed to supervise the installation of a new computerized dispatch system at the 911 center.  Thus, according to the defendants, Raimondi's poor job performance, not her FMLA leave, caused her termination.  (See Doc. 31-1, Aff. of Judy Mead, ¶ 6 ("The termination was due to poor job performance."); Doc. 31-2, Aff. of Ronald Williams ¶ 4 (same)).

The Third Circuit Court of Appeals has noted that the right to restoration is not absolute explaining that "if an employee is discharged during or at the end of a protected leave **for a reason unrelated to the leave**, there is no right to reinstatement."  Conoshenti, 364 F.3d at 141 (citing 29 C.F.R. § 825.216(a)(1)) (emphasis added); see also Sarnowski, 510 F.3d at 403 (concluding without discussion that the plaintiff would not

_____

leave.  This same policy also intentionally, or inadvertently, allowed the defendants to avoid their responsibilities under the FMLA.  As such, the leave policy, in addition to the defendants' choice not to restore Raimondi's employment, demonstrates a denial of benefits pursuant to the FMLA.

prevail if the employer could establish it terminated plaintiff for a reason unrelated to exercise of FMLA rights).[8]  Stated differently, poor performance or misconduct **prior to leave** may be the basis for the denial of restoration rights, provided that employment would not have continued if the FMLA leave had not occurred.  As such, the court must determine whether the defendants reason for Raimondi's termination–poor job performance–is related to her FMLA leave.[9]

_____

[8]  The federal regulations support this conclusion and state that an employer "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary action."  29 C.F.R. § 825.220(c).  The use of FMLA leave as a negative factor in employment actions "constitute[s] interfering with, restraining, or denying the exercise of rights provided by the Act."  Conoshenti, 364 F.3d at 142 (quoting 29 C.F.R. § 825.220(b)).

[9]  Additionally, the FMLA does not shield an employee from termination if the employee was allegedly involved in misconduct related to the use of FMLA leave.  For example, the Third Circuit has held that an employer's decision to suspend an employee for violating the employer's call-in policy while on FMLA leave did not abrogate the employee's FMLA rights. Callison, 430 F.3d at 121.  Similarly, the Third Circuit noted in an unpublished opinion that an employee is not entitled to restoration when the employee moonlights, or works part-time for a different company, while at home on FMLA leave.  Warwas v. City of Plainfield, 489 F. App'x 585, 588 (3d Cir. 2012); see also Pellegrino v. Commc'n Workers of Am., 478 F. App'x 742, 745-46 (3d Cir. 2012) (finding that an employee terminated for vacationing out of state in contravention of the employer's leave policy does not demonstrate FMLA interference).  The defendants in this case, however, do not contend Raimondi abused or misused her FMLA leave.

Here, defendants undisputed testimony establishes that Raimondi's termination is clearly related to her FMLA leave.  Commissioner Henry testified that Raimondi's leave was a contributing factor pertaining to her termination.  (Henry Dep. at 57-58).  The County's designee also testified that Raimondi's leave was a motivating factor in her termination. (Wyoming County Dep. at 52-53).  Specifically, the County stated that they had no evidence to contest Raimondi's assertion that her leave was a determinative factor in the decision to terminate her employment.  (Id. at 53-54).  Furthermore, the County testified that "[t]he Commissioners were very concerned" that Raimondi was away on leave "[b]ecause she's a department head and there was a big project going on that she should have been there for that whole project."  (Id. at 30).

Moreover, defendants have produced no documented evidence supporting their references to "performance problems" or Raimondi's "dereliction of duty".  The defendants have no documented negative performance evaluations pertaining to plaintiff's employment.  (SOF ¶ 48). Further, the defendants have no documented record of any disciplinary actions taken against Raimondi.  (Id.)  The defendants only rely on the affidavits of two Commissioners which state that Raimondi's termination

"was due to poor job performance."  (Doc. 31-1, Aff. of Judy Mead, ¶ 6;

Doc. 31-2, Aff. of Ronald Williams ¶ 4).

These conclusory, self-serving affidavits, however, are insufficient to

withstand Raimondi's motion for summary judgment because the affidavits

are blatantly contradicted by the record, so that no reasonable jury could

believe that Raimondi's leave played no part in the defendants' decision to

terminate her employment.  Gonzalez v. Sec'y of Dep't of Homeland Sec.,

678 F.3d 254, 263 (3d Cir. 2012); see also Scott v. Harris, 550 U.S. 372,

380 (2007) ("When opposing parties tell two different stories, one of which

is blatantly contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of facts for the purposes of

ruling on a motion for summary judgment.").

Accordingly, defendants' argument that Raimondi's poor job

performance, not her FMLA leave, caused her termination fails as a

matter of law.  Ergo, the court will find that Raimondi was entitled to

benefits under the FMLA and the defendants illegitimately prevented her

from obtaining those benefits.  Conoshenti, 364 F.3d at 142 (quoting 29

C.F.R. § 825.220(b)).

**Conclusion**

Based upon the above reasoning, the court will grant Raimondi's motion for partial summary judgment pertaining to liability.  Raimondi established, as a matter of law, that: (1) she was an eligible employee under the FMLA; (2) the defendants were an employer subject to the FMLA's requirements; (3) she was entitled to FMLA leave; (4) she provided notice to the defendants of her intention to take FMLA leave; and (5) she was denied benefits to which she was entitled under the FMLA. Therefore, the sole remaining issue to be tried is damages.  An appropriate order follows.

**Date:  05/24/2016**                    **s/ James M. Munley**
                                         **JUDGE JAMES M. MUNLEY**
                                         **United States District Court**

31