IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA RAIMONDI, | : | No. 3:14cv1918 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| WYOMING COUNTY, THOMAS S. | : | |
| HENRY, JUDY KRAFT MEAD and | : | |
| RONALD P. WILLIAMS, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is Plaintiff Debra Raimondi's (hereinafter "Raimondi" or "plaintiff") motion in limine filed in advance of the pretrial conference. (Doc. 45). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the court will grant in part and deny in part plaintiff's motion.

**Background**

The instant Family and Medical Leave Act (hereinafter "the FMLA") lawsuit arose from Raimondi's employment with Defendants Wyoming County and Wyoming County Commissioners Thomas S. Henry, Judy Kraft Mead, and Ronald P. Williams (collectively "defendants"). In 2006, defendants hired Raimondi to serve as Assistant Director of Wyoming County's 911 Center. (Doc. 27, Pl.'s Concise Statement of Facts

(hereinafter "SOF") ¶ 8).[1]  In 2007, defendants promoted Raimondi to the Director of Wyoming County's 911 Center.  (Id.)  Raimondi worked as the director until her termination on July 10, 2014.  (SOF ¶¶ 8, 45-46).

At the time of Raimondi's employment, her parents lived together in Indiana.  (SOF ¶ 14).  Two months before her termination, in late April or early May 2014, Raimondi's father fell and fractured his femur, which required the surgical insertion of a rod to promote stability and healing.  (Doc. 25-4, Ex. D, Debra Raimondi Decl. (hereinafter "Raimondi Decl.") ¶¶ 7-8; Doc. 25-10, Ex. J., medical records at 6-7).  Upon completion of his post-operation recovery, the hospital planned to discharge Raimondi's father to a nursing home to rehabilitate.  (Raimondi Decl. ¶¶ 7-8).

In early May 2014, Raimondi's father entered a nursing home to recover from surgery.  (Id. ¶ 9).  At the same time, Raimondi's mother entered a nursing home because she could not care for herself alone.[2]

---

[1]  In this background section, the court will cite to Raimondi's statement of material facts as they are generally admitted by the defendants.  (See Doc. 31, Defs.' Answer to SOF).

[2]  Raimondi's mother suffered from active muscle spasms, Alzheimer's Disease, heart disease, hyperlipodemia, hypertension, and essential tremor, which caused her head and hands to continually shake. (Raimondi Decl. ¶ 5; Doc. 25-10, Ex. J., medical records at 1).  Regarding daily living activities, Raimondi's mother required assistance with cooking, using the bathroom, bathing, dressing, taking medications at the proper

(Id. ¶¶ 10-11).  On May 15, 2014, Raimondi's father telephoned her and requested she come to Indiana and care for her mother so her mother could be released from the nursing home.  (Id. ¶ 13).  Apparently, Raimondi's father believed the nursing home failed to administer proper mental health medications to her mother, causing her mother to experience episodes of pain, anxiety, and difficulties with sleeping and eating.  (Id. ¶ 12).

In June 2014, Raimondi traveled to her parents' house in Indiana.  (SOF ¶ 26).  While on leave in Indiana with her parents, Raimondi called the Commissioner's office and spoke with Commissioners Henry, Mead, and Williams on or about July 1, 2014.  (SOF ¶ 34).  During this call, Commissioner Williams informed Raimondi that she would not be restored to her position and that her employment would be terminated unless she chose to resign.  (SOF ¶¶ 6-7, 35).

Soon thereafter, Raimondi returned to Pennsylvania and attended a meeting with the Commissioners on Tuesday, July 8, 2014.  (SOF ¶¶ 37-38).  Raimondi informed the defendants that she would not resign.  (SOF ¶ 45).  In response, the defendants terminated Raimondi's employment.

---

times throughout the day, and walking.  (Raimondi Decl. ¶ 5).

(Doc. 25-7, termination letter dated July 10, 2014).

In response to her termination, Raimondi filed a four-count complaint. Only Count I of plaintiff's complaint, interference under the FMLA, survived the defendants' motion to dismiss. On February 26, 2016, Raimondi filed a partial motion for summary judgment on the issue of defendants' liability under the FMLA, which the court granted on May 24, 2016. (Doc. 39). Thus, the sole remaining issue to be tried is damages.

**Discussion**

A pretrial conference has been scheduled, and in accordance with the court's rule, plaintiff filed a motion in limine regarding the admissibility of evidence and testimony. Plaintiff's motion contains four (4) issues, which we will address in order.

**I. Plaintiff's criminal investigation and charges**

On May 18, 2016, almost two years after the defendants improperly terminated her employment, the Wyoming County District Attorney filed a fourteen (14) count criminal complaint against the plaintiff. The complaint charges the plaintiff with thirteen (13) counts of illegally intercepting communications, while employed as the Wyoming County's 911 director, in contravention of 18 PA. CONS. STAT. ANN. § 5703(1) and one (1) count

of obstruction of the administration of law in violation of 18 PA. CONS. STAT. ANN § 5101.

Plaintiff seeks to preclude this evidence from trial, arguing this evidence is irrelevant and unfairly prejudicial. The defendants argue plaintiff's criminal investigation and charges are relevant, as they limit plaintiff's available remedies under the FMLA. After a careful review, the court agrees with the defendants.

Federal law provides that relevant evidence is generally admissible. FED. R. EVID. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. The law provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

The FMLA provides for several kinds of remedies and damages, including back pay, front pay, and liquidated damages. 29 U.S.C. § 2617(a)(1)(A)-(B); <u>Donlin v. Phillips Lighting N. Am. Corp.</u>, 581 F.3d 73,

84-88 (3d Cir. 2009). Back pay is designed to make victims of unlawful discrimination whole by restoring them to the position they would have been in absent the discrimination. Donlin, 581 F.3d at 85 (citing Loeffler v. Frank, 486 U.S. 549, 558 (1988)). "Front pay is an alternative to the traditional equitable remedy of reinstatement, and is appropriate where there is irreparable animosity between the parties, or where a comparable position no longer exists." Id. at 86 (internal citations omitted).[3] The FMLA's liquidated damages provision directs that "any employer who violates section 2615 of this title shall be liable" to the employee for damages, including "an additional amount as liquidated damages equal to the sum [of monetary damages and interest on those damages]." 29 U.S.C. § 2617(a)(1)(A)(iii).

In the instant matter, the Wyoming County District Attorney's investigation of plaintiff's alleged criminal conduct in the form of wiretapping and obstruction of justice is relevant to the issue of damages. Specifically, a jury could determine that the defendants would have made the same decision to terminate plaintiff's employment on the date that they

---

[3] Front pay awards account for expected future damages arising from the employer's wrongful conduct, however, such damages do not "guarantee every claimant . . . an annuity to age 70." Anastasio v. Schering Corp., 838 F.2d 701, 709 (3d Cir. 1988).

discovered plaintiff's alleged criminal conduct in the form of wiretapping and obstruction of justice had it not been made previously.  This determination would limit any award of lost wages from the date of the unlawful discharge to the date the defendants would have terminated plaintiff's employment based on this new information.  See McKennon v. Nashville Banner Publ'g Co., 513 U.S. 361-63 (1995) (explaining that after-acquired evidence pertaining to information obtained after an improper termination, which would have caused the employee's dismissal, precludes the employee from seeking reinstatement or front pay, and further limits an amount of back pay to the date the employer discovered the subsequent misconduct).  Thus, this information is relevant.

Plaintiff counters that any evidence pertaining to plaintiff's wiretapping investigation and conviction is after-acquired, which the defendants failed to plead as an affirmative defense. Regarding after-acquired evidence, the Third Circuit Court of Appeals has explained that:

> [w]hat sets an after-acquired evidence case far apart from a mixed-motives case like Price Waterhouse [v. Hopkins, 490 U.S. 228 (1989)] or a pretext case like McDonnell Douglas is that the articulated "legitimate" reason, which was non-existent at the time of the adverse decision, could not possibly have motivated the employer to the slightest degree. After-acquired evidence, simply put, is not relevant in establishing liability under Title VII or ADEA because the

> sole question to be answered at that stage is whether the employer discriminated against the employee on the basis of an impermissible factor at the instant of the adverse employment action.

Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221, 1228 (3d Cir. 1994). Furthermore, "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." McKennon, 513 U.S. at 352, 362-63.

In the instant matter, the defendants failed to expressly plead "after-acquired" evidence as an affirmative defense. A review of the defendants answer, however, establishes that defendants' assert "the complaint fails to state a claim upon which relief can be granted" and "defendants had a legitimate, non-discriminatory reason to terminate plaintiff's employment." (Doc. 16, Answer ¶¶ 60, 62). Thus, the court will construe these affirmative defenses to include after-acquired evidence.

Plaintiff next argues that admitting this evidence on the eve of trial significantly prejudices her because the defendants deprived her of any discovery regarding this issue. We agree to the extent that we will reopen

discovery for ninety (90) days.[4]  Accordingly, the court will deny plaintiff's motion to preclude from trial evidence regarding plaintiff's alleged criminal conduct in the form of wiretapping and obstruction of justice charges, and we will grant the parties ninety (90) days to conduct discovery on this issue.

## II. Defendants' Expert

Plaintiff next seeks to preclude defendants' expert from testifying at trial because defendants submitted their expert's report six (6) days after the expiration of the court's expert report deadline.  The defendants respond that "[t]here was no 'flagrant disregard' for the court's order" establishing the expert report deadline.  (Doc. 48, Defs.' Br. in Opp'n at 4). Instead, "[c]ounsel mistakenly noted in his calender that the report was due October 8, 2016, instead of September 28, 2016."  (Id.)  The defendants' explanation, combined with the fact that the court will grant the parties an additional ninety (90) days of discovery, satisfies the court

---

[4]  While not an exhaustive list of relevant discoverable material, the plaintiff may seek discovery pertaining to the underlying facts and investigation pertaining to her ongoing wiretapping and obstruction of justice criminal case.  Additionally, plaintiff may seek discovery regarding any individual employed by defendants that was charged or convicted with a crime over the past ten (10) years and any investigation or discipline issued by the defendants to these employees.

9

that plaintiff will have ample time to review defendants' expert's report prior to trial. Ergo, the court will deny plaintiff's motion in limine on this issue.

### III. Plaintiff's Employment Disciplinary History

Plaintiff has also filed a motion in limine to exclude from trial evidence regarding her work history. Plaintiff argues the court has already determined defendants interfered with her FMLA rights, and therefore, this information is irrelevant. Additionally, plaintiff claims this information is unfairly prejudicial. We disagree.

As previously discussed, plaintiff's past employment history is relevant to damages. Furthermore, plaintiff cites no authority, and our research has uncovered none, to support her assertion that her work performance is unfairly prejudicial. Indeed, the Third Circuit Court of Appeals requires the opposite conclusion. See Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980) (noting that Rule 403 does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case; rather, the rule only protects against evidence that is **unfairly** prejudicial). Ergo, the court will deny plaintiff's motion to exclude this evidence.

**IV. Defendants' Solicitor**

Finally, plaintiff seeks to question the defendants' solicitor at trial should defendants assert they relied on the solicitor's advice regarding plaintiff's termination. The defendants do not object to this motion in limine. Instead, the defendants state that they will not present testimony from the former Wyoming County Solicitor regarding plaintiff's termination. (Doc. 48, Defs.' Br. in Opp'n at 5). Thus, the court will grant plaintiff's motion as unopposed.

**Conclusion**

Based upon the above reasoning, the court will grant in part and deny in part plaintiff's motion in limine. The court will grant, as unopposed, plaintiff's motion pertaining to the defendants' former solicitor. The court will deny plaintiff's motion in all other aspects. Finally, the court will grant the parties ninety (90) days to conduct discovery regarding plaintiff's ongoing criminal investigation. An appropriate order follows.

Date:   11/02/2016                        s/ James M. Munley
                                                        **JUDGE JAMES M. MUNLEY**
                                                        **United States District Court**